# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00266-CV

---

**Johnny Baker and Lacrecia Baker, Appellants**

**v.**

**Devante Williams; and Swift Transportation Co. of Arizona, LLC, Appellees**

---

**FROM THE 169TH DISTRICT COURT OF BELL COUNTY**
**NO. 298,373-C, THE HONORABLE CARI L. STARRITT-BURNETT, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This appeal arises out of a personal injury lawsuit brought by appellants Johnny Baker and Lacrecia Baker against appellees Devante Williams and Swift Transportation Co. of Arizona, LLC, arising out of a collision between two tractor-trailers. After the jury returned a verdict finding 100% liability for Baker and no liability for Williams and awarding no damages to Baker, the trial court entered a final take nothing judgment. Baker now appeals, arguing the trial court abused its discretion by failing to exclude expert testimony by the investigating officer. For the following reasons, we affirm the final judgment.

## BACKGROUND

While driving a commercial tractor-trailer in July 2016, Johnny Baker (Baker) struck the back of another commercial tractor-trailer, operated by Devante Williams, that was at

the time parked on the shoulder of the interstate.[1]  Trooper Juan Gutierrez of the Texas Department of Public Safety was the first officer on the scene of the collision.  In his post-collision report, Trooper Gutierrez concluded that Baker had improperly driven on the highway's improved shoulder before colliding with Williams, that Williams's truck was disabled, and that Williams's failure to place emergency reflective triangles behind his disabled trailer was not a "contributing factor" to the collision.  Trooper Gutierrez's report also indicated that Baker may have been "fatigued or asleep," which may have contributed to the collision.

In 2018, Baker filed suit against Williams and Swift, asserting causes of action premised on Williams's alleged negligence in operating the tractor-trailer and Swift's alleged negligence in training and supervising Williams.  In particular, Baker later alleged in his amended pleadings that Williams was negligent because, among other things, Williams failed to timely place three bidirectional reflective triangles behind his disabled tractor-trailer as required under federal law.

The parties presented their cases before a jury from October 17 and 24, 2022.  In the leadup to the trial, Baker filed a "Motion in Limine to Exclude Expert Testimony," seeking to exclude Trooper Gutierrez's testimony and portions of his collision report on the ground that Trooper Gutierrez did not qualify as an expert on the topics of safe operation of commercial vehicles and causation.  The trial court considered the motion to exclude at a pre-trial hearing, and after hearing arguments from counsel, the trial court denied the motion and stated that Trooper Gutierrez's testimony and report would not be limited.

In addition to all of the other evidence presented at trial, the jury repeatedly viewed a dual-camera video of the collision, which included simultaneous video feeds of both

---

[1] Williams was driving the tractor-trailer on behalf of Swift.

the interior of Baker's tractor-trailer cab and the roadway in front of Baker's vehicle. The jury also heard testimony from Baker, Williams, and approximately twenty-one other witnesses. Although Trooper Gutierrez did not provide live testimony at trial, the jury considered his post-collision report and portions of his deposition. At the end of trial, the jury returned a verdict finding Baker 100% at fault for the collision and awarded Baker zero dollars in damages. The trial court subsequently entered a final judgment on February 10, 2023, ordering that Baker take nothing against Williams and Swift. Baker filed a motion for new trial, which was denied by the trial court. This appeal followed.

## RELEVANT LAW AND STANDARD OF REVIEW

We review the trial court's decision to admit expert testimony for an abuse of discretion. *Guadalupe-Blanco River Auth. v. Kraft*, 77 S.W.3d 805, 807 (Tex. 2002); *see also Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020) (per curiam) (stating abuse of discretion applies to trial court's decision to admit or exclude evidence). "To testify as an expert, a witness must be qualified, and the proposed testimony must be relevant to the issues in the case and based upon a reliable foundation." *Gunn v. McCoy*, 554 S.W.3d 645, 666 (Tex. 2018) (citing Tex. R. Evid. 702). "The trial court's role is not to determine the truth or falsity of the expert's opinion' but 'to make the initial determination whether the expert's opinion is relevant and whether the methods and research upon which it is based are reliable." *State v. Skyway Holdings LLC*, No. 03-19-00143-CV, 2021 WL 833965, at *2 (Tex. App.—Austin Mar. 5, 2021, pet. denied) (mem. op.) (quoting *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995)). The jury then assesses the weight and credibility of that testimony. *See Robinson*, 923 S.W.2d at 558. "To reverse a judgment based on a claimed error in admitting or excluding

evidence," we review the entire record, and "a party must show that the error probably resulted in an improper judgment." *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001); *see also* Tex. R. App. P. 44.1(a).

## DISCUSSION

On appeal, Baker argues that the trial court abused its discretion by failing to exclude Trooper Gutierrez's testimony as an expert witness and that that error was harmful. Assuming without deciding that Trooper Gutierrez did not qualify as an expert witness and the trial court erred by failing to exclude his testimony, Baker has failed to demonstrate that allowing the jury to hear the testimony was harmful.

The Texas Supreme Court has "recognized the impossibility of establishing a specific test for determining harmful error," instead "entrust[ing] the matter to the sound discretion of the reviewing court." *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 145 (Tex. 2016). Even when an evidentiary ruling is erroneous, the reviewing court may only reverse if the error "probably caused the rendition of an improper judgment." Tex. R. App. P. 44.1(a)(1). "Probable error is not subject to precise measurement, but it is something less than certitude." *El Paso Indep. Sch. Dist. v. Portillo*, 661 S.W.3d 512, 539 (Tex. App.—El Paso 2023, pet. denied) (quoting *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 242–43 (Tex. 2010)). Whether the error was harmful is a matter of judgment based on an evaluation of the whole case, including all of the evidence before the factfinder, the strengths and weaknesses of the case, and the ultimate verdict. *See Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008). When considering the "role the evidence played in the context of the trial," erroneously admitted evidence is harmful if it was crucial to a key issue. *Id.* at 873. Alternatively, the error is

4

harmless if that evidence is cumulative of other evidence or "if the rest of the evidence was so one-sided that the error likely made no difference." *Id.*

As an initial matter, we have only received a partial record on appeal, consisting of the pretrial hearing on the motion to exclude, testimony of six of the twenty-three witnesses who testified at trial, the jury charge conference, and exhibits admitted into evidence. However, that partial record does not include, among other things, voir dire, opening or closing statements by the parties, or plaintiff's full testimony. *See id.* at 871 (directing that harm analysis is based on considering whole trial). Because the record does not contain the request for a partial reporter's record that includes a "statement of the points or issues to be presented on appeal," Tex. R. App. P. 34.6(c)(1), we cannot determine whether other testimony in the record may have been relevant to the issues on appeal or the emphasis, if any, placed on Trooper Gutierrez's testimony during those missing portions, *see, e.g.*, *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004) (explaining that court may consider "efforts made by counsel to emphasize the erroneous evidence" in determining harm). Accordingly, we must presume "that the material missing from the reporter's record is relevant and supports the trial court's judgment." *Leyva v. Aguado Stone, Inc.*, No. 03-23-00227-CV, 2023 WL 8243816, at *2 (Tex. App.—Austin Nov. 29, 2023, no pet.) (mem. op.).

Even limiting our review to the partial record before us on appeal, we cannot say the admission of Trooper Gutierrez's testimony was so harmful as to probably cause an improper judgment. The testimony presented to the jury consisted of his conclusions contained in the post-collision report about what may have contributed to the collision—that Baker had improperly driven on the highway's improved shoulder before colliding with Williams, that William's truck was disabled, that William's failure to place emergency reflective triangles

5

behind his disabled trailer was not a "contributing factor" to the collision, and that Baker may have been "fatigued or asleep." Portions of Trooper Gutierrez's deposition testimony were also introduced at trial, addressing similar topics and conclusions.

Contrary to Baker's suggestions, however, Trooper Gutierrez's testimony was not crucial to the jury's determination of the key issues before them and was largely cumulative of other evidence in the partial record before us. *See Reliance Steel*, 267 S.W.3d at 873. In particular, throughout the trial the jury repeatedly viewed the dual-screened collision video, which included simultaneous recordings of both the inside of the cab of Baker's tractor-trailer and the roadway in front of Baker's vehicle. The collision video spanned the approximately ten seconds preceding the collision through the immediate aftermath, and provided the jury, as factfinder, ample opportunity to determine the fault of the respective parties based on what the video showed. The collision video was such a crucial piece of evidence before the jury that it was played multiple times, "ad nauseum," throughout the trial, with multiple testifying witnesses repeatedly reinforcing the importance of that videographic evidence. Judd Joy, Baker's trucking reconstruction expert, testified that the video was "absolutely" the best evidence of how the collision occurred. William Miller, Williams's accident reconstruction expert, testified that the video of the collision was the "unbiased witness in this case." And two other expert witnesses, Dennis Seale (Baker's human factors expert witness) and Roger Allen (Baker's trucking expert witness), provided their testimony at trial while contemporaneously watching and describing the collision video.

Additionally, witnesses provided testimony relevant to the jury's determination that Williams was not at fault for the collision. On the plaintiff's side, video excerpts from Baker's deposition were presented to the jury where Baker admitted that, prior to the collision,

6

he saw the "rear door" of Williams' tractor-trailer and that "there was no - - no - - nothing and then I look - - looked - - I look up and see doors." Seale testified that the reflective triangles provided a better visual cue than flashing lights about the incapacitated tractor-trailer, but when pressed whether Baker's actions were excused by Williams' failure to place reflective triangles, Seale conceded that "I'm not saying that, no, sir." Joy conceded that "[t]here does seem to be times when [Baker] does seem to be looking down" immediately before the collision, that reflective triangles would not change the outcome if a driver were distracted, that his calculations were based in part on the collision video, and that the jury "can obviously look at the video and determine for themselves." Allen also agreed that there were telltale signs of inattention and distraction by Baker, that Williams' tractor-trailer is visible on the side of the road for ten seconds before the collision, and that Baker would not see reflective triangles or flashing lights "if he's totally distracted in some way."

Similarly, Miller, the defendants' expert witness, testified about distractions inside Baker's tractor-trailer at the time of the collision and described his determination that the collision video showed Baker was allegedly using an electronic device immediately before the collision. When asked about whether placing reflective triangles to warn of a disabled vehicle would have made a difference, Miller testified that there were several "huge cues" already present to warn Baker of the disabled tractor-trailer (such as the lane lines, reflective tape on the trailer, and the flashing hazard lights on Williams' tractor-trailer) and that "if you don't see the elephant, how can you see the mice?" Reviewing the whole case, including all the evidence before the factfinder, *see Reliance Steel*, 267 S.W.3d at 871, we conclude that there was extensive other evidence supporting the jury's determination that Williams was not at fault for the collision, *see Gunn*, 554 S.W.3d at 665 ("It is the province of the jury to resolve conflicts in

7

the evidence, and when reasonable jurors could resolve conflicting evidence either way, we presume they did so in accordance with the verdict.").[2]

Baker argues that Trooper Gutierrez's testimony was uniquely persuasive because he was the only disinterested expert witness. *See, e.g.*, *Nikoloutsos v. Nikoloutsos*, 47 S.W.3d 837, 839 (Tex. App.—Beaumont 2001, pet. denied) ("The testimony of a disinterested person undoubtedly carries more weight than similar testimony coming from interested parties to the case."). Although testimony by a disinterested police officer "could" have an impact on a close case, *see, e.g.*, *Ter-Vartanyan v. R & R Freight, Inc.*, 111 S.W.3d 779, 784 (Tex. App.—Dallas 2003, pet. denied), the cases relied on by Baker did not have videographic evidence of their respective collisions; instead, those cases involved juries weighing two competing narratives of what *might* have occurred, based solely on the testimony presented by the two sides. *See, e.g.*, *Walker v. Rangel*, No. 14-08-00643-CV, 2009 WL 4342505, at *7 (Tex. App.—Houston [14th Dist.] Dec. 3, 2009, no pet.) (mem. op.) (stating four witnesses in total testified on causation and concluding erroneous admission of testimony by two witnesses favoring one collision narrative probably resulted in improper judgment). We cannot say Trooper Gutierrez's disinterested testimony was similarly persuasive in this case, given the admission of the collision video at trial.[3]

---

[2] Similarly, it is the province of the jury to resolve the conflicting testimonial evidence regarding the extent and urgency of the disability suffered by Williams's tractor-trailer and Williams's decision to stop his tractor-trailer on the improved shoulder. *See Gunn v. McCoy*, 554 S.W.3d 645, 665 (Tex. 2018).

[3] Baker also complains that Trooper Gutierrez's testimony was harmful because the jury was not presented with evidence showing his lack of qualifications. Assuming deposition materials relating to Trooper Gutierrez's qualifications were not shown to the jury, nothing in the partial record before us demonstrates that Baker was prevented from introducing those materials

8

Baker argues that Trooper Gutierrez's testimony was not cumulative because he was the only testifying law enforcement officer and he was the only witness to testify about fatigue or sleepiness of Baker being a contributing factor for the collision. However, whether testimonial evidence is cumulative is not based on the attributes of the testifying witness but rather whether the evidence is similar to other evidence already in the record. *See Reliance Steel*, 267 S.W.3d at 873. Although Trooper Gutierrez was the sole testifying law enforcement officer, his testimony about the reflective triangles and whether they were a contributing factor to the collision is cumulative of other similar evidence, such as the collision video itself and testimony by the other expert witnesses. *See, e.g.*, *Siddiqui v. Yellow Freight Sys., Inc.*, No. 03-98-00517-CV, 2000 WL 1433650, at *5 (Tex. App.—Austin Sept. 29, 2000, pet. denied) (not designated for publication) (concluding testimony about observations of driver's behavior at emergency room was cumulative of other testimony about party's alleged intoxication).

Even assuming the testimony about Baker being potentially fatigued or drowsy at the time of the collision was not cumulative of other evidence at trial, we cannot say that the limited testimony about Baker's alleged fatigue or sleepiness (involving a single code entry on the post-collision report and references on approximately six pages of Trooper Gutierrez's 105-page deposition transcript) was crucial to the key issues before the jury. Without opening and closing statements in the record on appeal, nothing in the record shows that fatigue or sleepiness was emphasized by either counsel in their arguments to the jury. *See Nissan Motor*, 145 S.W.3d at 144. Moreover, the record on appeal shows that instead of fatigue or sleepiness of Baker, the parties focused extensively on the content of the collision video and whether Baker

as part of its case-in-chief or why Baker decided not to seek admittance of that qualification evidence.

was distracted by a cellphone or other electronic device at the time of the collision. *See Reliance Steel*, 267 S.W.3d at 873 (explaining evidence must be "crucial" to key issue to be likely harmful).[4]

Baker contends that Trooper Gutierrez's testimony must have caused an improper judgment because the jury assigned no fault to Williams. That is, Baker argues that Williams should have been held at least partially at fault for the collision for failing to place reflective triangles behind his disabled tractor-trailer in a timely fashion, and therefore Trooper Gutierrez's testimony must have improperly led the jury to assign no fault to Williams. Even if the jury should have assigned some percentage of fault to Williams, that does not mean that Trooper Gutierrez's testimony led to an improper judgment; Baker would have still been barred from recovery if the jury had assigned anything less than 50% of responsibility to Williams. *See* Tex. Civ. Prac. & Rem. Code § 33.001. The jury, however, was presented with testimony by multiple expert witnesses, the collision video, and numerous other exhibits at trial from which the jury could determine who was at fault for the collision and undertake their role as "the sole judges of the credibility of the witnesses and the weight to give their testimony." *Gunn*, 554 S.W.3d at 665. Given the evidence before them, the jurors could have determined that any failure by Williams to place the reflective triangles was irrelevant because Baker would not have seen them because he was distracted prior to the collision. *See id.* ("It is the province of the jury to resolve conflicts in the evidence, and when reasonable jurors could resolve conflicting evidence either way, we presume they did so in accordance with the verdict."). And the jury could have reached

---

[4] When discussing how Baker's possible fatigue or sleepiness may have contributed to the collision, Trooper Gutierrez often contemporaneously mentioned that Baker being distracted may have also been a contributing factor.

that determination regardless of the testimony by Trooper Gutierrez. *See Reliance Steel*, 267 S.W.3d at 873.

Based on the partial record on appeal, we conclude that any error in admitting Trooper Gutierrez's testimony as an expert witness did not probably cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a); *Reliance Steel*, 267 S.W.3d at 873. We overrule Baker's sole issue on appeal.

## CONCLUSION

For these reasons, we affirm the final judgment.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Smith and Theofanis

Affirmed

Filed:   April 25, 2024

11